United States District Court
Southern District of Texas
**ENTERED**
May 29, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-15-265-3 |
| | § | CIVIL ACTION NO. H-17-3342 |
| JERRELL DEVON JAMES, | § | |
| | § | |
| Defendant-Movant. | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C. § 2255 is Movant Jerrell Devon James's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 174),[1] and the United States' Answer and Motion to Dismiss as Barred by Plea Agreement (Document No. 189). After reviewing Movant's § 2255 Motion, the Government's Answer and Motion to Dismiss as Barred by Plea Agreement, the record of the proceedings before the District Court in the underlying criminal case and on appeal, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Movant Jerrell Devon James's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 174) be DENIED, and that the United States' Motion to Dismiss as Barred by Plea Agreement (Document No. 189) be GRANTED.

---

[1] Jerrell Devon James's Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-17-3342 and at Document No.174 in Criminal Action No. H-15-265. References hereafter will be to the Criminal Document numbers unless otherwise indicated.

I.  **Procedural History**

Movant Jerrell Devon James ("James"), who is currently in the custody of the United States Bureau of Prisons, is seeking federal habeas corpus relief under 28 U.S.C.§ 2255. This is James's first attempt at § 2255 relief.

On May 20, 2015, James, Keith Deshawn Stephens, Zachary Loudd, Andrew Demon Holley, and Crystal Lashay were charged by Indictment with aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and 2 (Count One), and aiding and abetting using and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§924(c)(1)(A)(ii) and 2. (Count Two). On January 15, 2016, James pleaded guilty, pursuant to a written Plea Agreement, to Counts 1 and 2. (Document Nos. 80. Transcript of Rearraignment, Document No.190). The written Plea Agreement is signed by James and was discussed at his Rearraignment. Under the terms of the written Plea Agreement, James waived his right to appeal the sentence imposed or the manner in which it was determined. The written Plea Agreement specifically refers to relief under § 2255 and expressly states that James waives his right to seek § 2255 relief. (Document No. 80, ¶5). The signed written Plea Agreement makes clear that James is pleading guilty freely and voluntarily (Document No 80, ¶ 21), and contains an Addendum, also signed by James, that states that he has "read and carefully reviewed every part of this plea agreement with my attorney, I understand this agreement and I voluntarily agree to its terms." (Document No. 80, p. 17-18). Moreover, the transcript of his Rearraignment hearing confirms that James understood the general terms of the plea agreement, the charges against him, the elements of the crimes, the rights he would give up if he pleaded guilty, the possible penalties, the sentencing process, that he had discussed the written plea agreement and that he understood the terms, and that he was waiving both his right to appeal and to

collateral review. (Document No. 190, p. 4-18). With respect to the waiver, the record shows the following exchange between the Court and James:

> The Court: Do you also understand that under some circumstances you or the government would have the right to appeal any sentence that I impose?
>
> The Defendant: Yes, ma'am.
>
> The Court: But do you also understand that by entering into this written plea agreement you will be waiving or giving up virtually any rights you might to appeal any sentence that I impose. Do you understand that?
>
> The Defendant: Yes, ma'am.
>
> The Court: And that would include a collateral attack such as a habeas corpus. Do you understand that?
>
> The Defendant: Yes, ma'am.

(Document No. 190, p. 11).

The record further reflects that the Government summarized the facts that it was prepared to prove if the case proceeded to trial. (Document No. 190, p. 16-18), In response, James confirmed the accuracy of the summary and his role in the offense. (Document No. 190, p. 18). The Prosecutor stated:

> If this case were to proceed to trial, the United States would prove each element of the offense beyond a reasonable doubt. The following facts, among others, would be offered to establish the defendant's guilt:
>
> That on January 27, 2014 three men, two of whom were subsequently identified as Andrew Holley and Jerrell James, entered the Chase Bank located at 4755 West Panther Creek in the Woodlands, Texas, which is a federally insured institution. These gentlemen were carrying firearms with their faces covered.
>
> While Holley and James went over to the teller counter, the unknown male stayed in the lobby of the bank standing as a lookout. Once over the teller counter, Holley and James forced the bank employee to open the bank's vault, threatening the employee at gunpoint in an effort to make the employee move faster.

3

Once the vault was opened, Holley and James removed $259,200 in U.S. currency which were all brand new, undistributed bills that were sequentially numbered.

After placing the currency in a bag, Holley and James and the unknown male exited that bank and drove away in a gold Dodge Ram 1500 that was later determined to have been stolen.

During the interview of the bank employees and after review of the surveillance video of the interior and exterior of the bank, Montgomery County Sheriffs deputies were able to identify Zachary Loudd, Crystal Lewis and Keith Stephens as additional suspects in the robbery.

Each of the individuals who were identified were interviewed. Mr. Holley made a statement and admitted that he knew Keith Stephens and knew him as "Nook" and that "Nook" had asked to participate in the bank robbery.

Further investigation also revealed that on the date of the robbery Andrew Holley bought a used vehicle for $9,300 and electronic merchandise for $865, all of which he paid for in cash. Holley also confirmed that Jerrell James was his best friend and James lived across the street from Keith Stephens, also known as "Nook."

On January 28, 2014, Jerrell James uncle said that he had overheard his nephew, Jerrell James, say that he and Holley had just robbed a bank. The uncle also confirmed that both Holley and James had purchased vehicles after robbing the bank.

In an interview with an unindicted co-conspirator, the co-conspirator admitted to investigators that he was the driver of the switch car in the robbery. That co-conspirator identified Holley and James as two of the three individuals who went into the bank to commit the robbery. The co-conspirator confirmed that Loudd and Stephens acted as lookouts. He also identified Stephens as the individual who planned and coordinated the robbery.

(Document No. 190, p. 16-18) & Written Plea Agreement (Document No. 80, ¶ 13).

Prior to sentencing, a Pre-Sentence Investigation Report ("PSR") was prepared. (Document No.105, 106). James filed written objections to the PSR (Document No. 98).[2] With respect to

---

[2] The record shows that James objected to a two level increase for obstruction of justice and being denied a three level reduction for acceptance of responsibility. James denied making any hand gestures towards co-defendant Crystal Lewis. Based on James's calculations, his sentence should be no more than 154 months.

calculating his guideline sentence, James had a base offense level of 20. Because the property of J.P. Morgan Chase Bank, a financial institution was taken, James's offense level was increased two levels under under U.S.S.G. § 2B3.1(b)(1). Because a person was abducted to facilitate the commission of the offense, pursuant to U.S.S.G. § 2B3.1(b)(4)(A), the offense level was increased by four levels. Because the intended loss amounted to $259,200, James's offense level was increased pursuant to U.S.S.G. § 2B3.1(b)(7)(c) by two levels. Because James willfully obstructed or impeded the administration of justice by threatening the life a co-defendant, the offense level was increased by two levels. With an adjusted offense level of 30, and with a criminal history category of III, James had an advisory guideline sentencing range of 121 to 151 months. The sentencing range did not take into account the punishment for Count 3S. Pursuant 18 U.S.C. § 924(c)(1)(A)(ii), Count 2 carried a mandatory consecutive term of 7 years imprisonment.

On October 14, 2016, James was sentenced to a term of imprisonment of 46 months on Count 1, to be followed by a consecutive sentence of 84 months imprisonment on Count 2, to be followed by five year concurrent terms of supervised release, a $200.00 special assessment, and restitution totaling $219,823.66. (Transcript of Sentencing Hearing, Document No. 184, p.11-15). In imposing James's sentence, the Court stated:

> Jerrell Devon James is before the Court for sentencing after pleading guilty to aiding and abetting in an armed bank robbery and brandishing a firearm in furtherance of a crime of violence. The investigation revealed that he was identified as a robbery crew member and participated in a bank robbery, which occurred on June 27, 2014 at JPMorgan Chase Bank, The Woodlands, Texas. His role was to gather the money from the bank.
>
> A few of the victims from this bank robbery were abducted to facilitate the commission of the offense as they were moved from the front teller counter to the vault in order to receive currency.

A firearm was otherwise used in this robbery as the victims had the firearms pointed at them. There was no increase in the guideline calculations for this enhancement since a mandatory consecutive sentence of 84 months as to Count Two captures this harm. A total of $259,200 was the intended loss in the case, but a total of $39,376.34 was recovered.

Mr. James also attempted to obstruct and impede the administration of justice by threatening Crystal Lewis with serious bodily injury or death, for which he based on — could indicate a further bank robbery. He will be responsible jointly and severally with the codefendants to pay restitution in the amount of $219,323.66, and he was an average participant in the robbery.

The investigation determined that the defendant was also involved in the bank robbery of Comerica Bank in Katy, Texas on December 30, 2013, wherein the bank suffered a loss amount of $13,435, 11,088 of which was recovered. This information is captured in the risk behavior, not part of the relevant conduct section of the PSR.

The defendant is a 22-year-old United States citizen whose criminal history began at the age of 14. He demonstrated an inability to abide by the laws of the United States. His prior adult convictions include assault causing bodily injury, family member; criminal mischief, a $500 to $1,500; theft of property, fifty dollars to $500; unauthorized use of a motor vehicle; possession of marijuana and terroristic threat.

He has a limited work history and has a general education development certificate.

(Document No. 184, p. 11-12).

Judgment was entered on October 19, 2016. (Document No. 156). James did not file an appeal of his conviction or sentence. James's conviction therefore became final on November 2, 2016, when the time to file a notice of appeal expired, fourteen days after entry of Judgment. *See* Fed. R. App. P. 4(b)(1)(A)(I); *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008).

On November 2, 2017, James timely filed the instant § 2255 motion. (Document No. 174). James claims that the Court allegedly violated his Fifth Amendment Right prohibiting "Double Jeopardy" when he was sentenced for bank robbery in violation of 18 U.S.C. §§ 2113(a), (d) and for aiding and abetting using and brandishing a firearm during and in relation to a crime of violence, in

violation of 18 U.S.C. § 924(c)(1)(A)(ii). He further claims that the Court, at sentencing, violated his Sixth Amendment right to a jury trial when it enhanced his offense level by two points for obstruction of justice. The Government has moved to dismiss James's § 2255 motion because it is foreclosed by the waiver in his written Plea Agreement. The Government further argues that even assuming that James had not knowingly and voluntarily waived his right to collaterally attack his conviction, his claims fail as a matter of law.

## II. Discussion

James's § 2255 Motion should be dismissed because he waived his right to collaterally challenge his conviction and/or sentence.

A defendant's wavier of his statutory right to collaterally challenge his conviction with a motion to vacate, set aside, or correct sentence under 28 U.S.C., § 2255, like a waiver by a defendant of his right to appeal, is generally enforceable if the waiver is both knowing and voluntary. *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994)(enforcing defendant's voluntary and knowing waiver of a § 2255 motion). The Fifth Circuit has held that a § 2255 waiver does not preclude review where there is an ineffective assistance of counsel claim where the claimed ineffective assistance directly affected the validity of the waiver in the plea itself. *United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002). The Fifth Circuit has further held that a § 2255 waiver does not preclude review where there is a claim that the sentence exceeds the statutory maximum. *United States v. Hollins*, 97 Fed. Appx. 477, 479 (5th Cir. 2004). In the context of a plea agreement, a sentence exceeds the statutory maximum only when it exceeds the maximum allowed by statute. *United States v. Bond*, 414 F.3d 542, 546 (5th Cir. 2005). Neither circumstance is alleged by James. In this case, the record shows that James, as part of his written Plea Agreement, waived his right to

appeal, and he also waived his right to collaterally challenge his conviction and/or sentence. (Document No.80, ¶ ¶ 5-7). In addition, at his Rearraignment Hearing, the Court engaged in an extended colloquy to ensure that James was competent to participate in the Rearraignment proceedings, understood the offense to which he was pleading guilty, the maximum sentence he faced, and the rights he was giving up by virtue of pleading guilty. (Transcript of Rearraignment, Document No. 190, p. 3-16 ). The record further shows that the Court questioned James about the waiver provisions. (Document No.190, p. 11). Given James's statements on the record, which carry a strong presumption of verity, *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), that he had read and discussed the written Plea Agreement with his counsel, that he understood the statutory and constitutional rights that he was waiving, that he understood the possible range of punishment and how his sentence would be determined, and that he understood that he waived his right to appeal and to file a post conviction proceeding, James has not shown that his plea was not counseled, knowing, and voluntary, and upon this record, James's waiver of his right to collaterally attack his conviction with a § 2255 Motion is valid and should be enforced. It serves as a bar to the instant § 2255 motion being considered by the Court.

Even assuming that James's claims were properly before the Court, the claims are all subject to dismissal on the merits.

James argues that he cannot be sentenced under both 18 U.S.C. § 2113(a) and (d) (armed bank robbery) and 18 U.S.C. § 924(c) (use of a firearm during and in relation to a crime of violence) because both arise out of the same conduct and therefore violate the Double Jeopardy Clause of the Fifth Amendment.

Upon this record, James's convictions do not violate the Double Jeopardy Clause and are not

otherwise unconstitutional. The Double Jeopardy Clause provides in pertinent part that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S.CONST. Amend. V. With respect to cumulative sentences imposed in a single trial, the Fifth Circuit in *United States v. Gonzales*, 841 F.3d 339, 355 (5t Cir. 2016) instructed:

> We recognize, though, that "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). This means that "[w]here . . . a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger* [*v. United States*, 284 U.S. 299 (1932)]" a defendant may receive cumulative punishment. *Id.*, at 368-69.

In *United States v. Holloway*, 905 F.2d 893 (5th Cir. 1990), the Fifth Circuit held that the Double Jeopardy Clause does not prohibit convictions and sentences under both §§ 924(c) and 2113(d). The Fifth Circuit wrote:

> "Where Congress authorizes cumulative punishments for even the same offense, the Double Jeopardy Clause of the Fifth Amendment is not offended. *Missouri v. Hunter*, 459 U.S. 359, 367 (1983). Section 924(c) was amended by the Comprehensive Crime Control Act of 1984 to include a mandatory penalty for the use of a firearm during a federal crime of violence and to statutorily overrule *Simpson [v. United States*, 435 U.S. 6] and *Busic [v. United States, 446 U.S. 398 (1980]*. Its legislative history clearly shows that Congress intended to completely revise § 924(c) so that it would serve as a cumulative punishment in addition to that provided for the underlying violent crime. Pub. L.No. 98-473 § 1005, 98 Stat. 1837, 2138.

*See also United States v. Gonzales*, 520 U.S. 1, 10 (1997)(noting that Congress amended § 924(c) in 1984 so that its sentencing enhancement would apply regardless of whether the underlying felony statute provides for an enhanced punishment if committed by the use of a dangerous weapon, as does the armed bank robbery statute); *United States v. Ramos*, 494 Fed. Appx. 641 (7th Cir. 2012)("Armed bank robbery and use of a gun during a crime of violence are different offenses for double jeopardy

9

analysis.").

To the extent that James's challenge to his § 924(c)(1)(A)(ii) conviction could be construed as a claim based upon the Supreme Court's decision in *Johnson v. United States*, __U.S.__, 135 S.Ct. 2551 (2015), and *Sessions v. Dimaya*, __U.S.__, 138 S.Ct. 1204 (2018), his claim fails.

In *Johnson*, the Supreme Court found that "an increased sentence under the residual clause of the Armed Career Criminal Act ("ACCA") violates the Constitution's guarantee of due process." *Johnson*, 135 S. Ct. at 2563. The holding in *Johnson* was made retroactive to cases on collateral review in *Welch*. *Welch*, 136 S. Ct. at 1265 ("*Johnson* is thus a substantive decision and has retroactive effect...on collateral review."). Here *Johnson* does not directly apply to James's conviction and/or sentence. That is because James was sentenced pursuant to 18 U.S.C. § 924(c)—not the ACCA, to wit, § 924(e).

To the extent that James claims his § 924(c) conviction is void for vagueness and should be invalidated for the same reasons articulated in *Sessions v. Dimaya*, 137 S. Ct. 1204 (2018), his claim fails. In *Sessions*, the Supreme Court held that § 16(b), as incorporated into the Immigration and Nationality Act's provision governing alien's removal from the United States, unconstitutionally vague. James's claim suggests that because the residual clause in § 924(c)(3) is identical to that found unconstitutionally vague in *Sessions*, his conviction for Count two is not valid. As discussed above, James pleaded guilty to using, carrying, and brandishing a firearm in the commission of a crime of violence pursuant to U.S.C. § 924(c)(1)(A)(ii). Under § 924(c), anyone uses or carries a firearm during or in relation to a "crime of violence" is subject to a mandatory minimum sentence. For purposes of § 924(c)(3), a "crime of violence" is a felony offense that:

(A) has an element the use, attempted use, or threatened use of physical force against

the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)-(B). The first clause, § 924(c)(3)(A), is referred to as the force clause. The second clause, § 924(c)(3)(B), is referred to as the residual clause. Here, James pleaded guilty to aiding and abetting armed bank robbery pursuant to 18 U.S.C. § 2113(a) and (d), which states:

(a) Whoever, **by force and violence, or by intimidation,** takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, on in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; or whoever enters or attempts to enter any bank, credit union, or any savings and loan association, or any building used in whole or in part as a bank, credit union, or as a savings and loan association, with intent to commit in such bank, credit union, or in such savings and loan association, or building, or part thereof, so used, any felony affecting such bank, credit union, or such savings and loan association and in violation of any statute of the United States, or any larceny

(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, **assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device,** shall be fined under this title or imprisoned not more than twenty-fives years, or both.

*Id.* (emphasis added). Because the elements of § 2113(a) include the use of "force and violence or intimidation," and the elements of § 2113(d) include the assault of a person or the placing of a person's life in jeopardy by the use of a dangerous weapon or device, both elements fall within the force clause of § 924(c)(3)(A), and not the residual clause. As such, James's conviction for armed bank robbery qualifies as a crime of violence under the force clause and his mandatory sentence was proper. *See Garcia v. United States*, No. 3:16-cv-1659-D-BN, 2017 WL 652182, at * 4 (N.D.Tex. Jan. 3, 2017); United *States v. Watson*, 881 F.3d 782 (9th Cir. 2018)(applying the categorical approach held that armed bank robbery under § 2113(a) and (d) qualifies as a crime of violence

under the force clause of § 924(c)). Since James has not stated a viable challenge to his § 924(c) conviction and/or sentence based on *Johnson* or *Sessions* or any arguable extension thereof, his claims fail.

Lastly, James claims that the Court violated his right to a jury trial by unlawfully enhancing his offense level two points for obstruction of justice and by enhancing his sentence based on the word of a law enforcement officer. The Government argues that James's reliance on the decision in *Alleyne v. United States*, 133 S.Ct. 2151 (2013) is misplaced. The Magistrate Judge agrees.

The Supreme Court in *Alleyne* held that any fact that increases a defendant's mandatory minimum sentence must be alleged in the indictment and submitted to a jury and proven beyond a reasonable doubt. *Id.* at 2160. "[*Alleyne*] did not imply that the traditional fact-finding on relevant conduct, to the extent it increases the discretionary sentencing range for a district judge under the Guidelines, must now be made by jurors." *United States v. Hinojosa*, 749 F.3d 407, 412 (5th Cir. 2014). In *United States v. Romans*, 823 F.3d 299, 316 (5th Cir. 2016), the Fifth Circuit noted that *Alleyne* did not address discretionary guideline enhancements that are determined by a court. Here, the two level increase to James's base offense level under U.S.S.G. § 3C1.1 did not increase a mandatory minimum sentence, so *Alleyne* does not apply. The record shows that counsel objected to the two level increase based on James's alleged threatening hand gesture toward a co-defendant, and the denial of a three level adjustment for acceptance of responsibility. The PSR states in pertinent part:

> ¶ 35. On November 5, 2014, Crystal Lewis advised MCSO deputies that she was threatened (while in custody) by Jerrell James, as she was leaving an AA meeting. Lewis advised that James signaled his hand towards his temple, as a threat that he was going to kill her. Lewis advised that James got close to a door, at which point Lewis screamed out and said "really ..ok." She was then escorted back to her cell.

Another inmate who was walking behind Lewis also advised deputies that she observed James put two of his fingers towards his temple and shoot twice as a signal that he was going to kill Lewis. The inmate reported that Lewis said something and the instructor coordinating the class shut the door. Another inmate who was walking behind Lewis, also advised that she saw James lowering his fingers from his head, but did not actually see him when he lifted his fingers up. The inmate reported that Lewis later told her that James was a co-defendant in her case, at which point the inmate reasoned that James had made the gesture to threaten Lewis.

¶ 36. Jerrell Devon James was interviewed for this report in the presence of defense counsel on February 9, 2015, via video conference at the United States Probation Office in Houston, Texas. James, through defense counsel, submitted a typewritten and signed statement of acceptance of responsibility to this officer on March 31, 2016. The statement is quoted in its entirety as follows:
"I'm writing this letter to let you know that I take full responsibility for my actions in the offense which I have committed. I did brandish a firearm inside of a bank that was being robbed. I never hit or placed my hands on no one in that bank. I did have a countdown in which I was signaling my co-defendant to hurry and get out of the bank. I do have a criminal history that consists of 2 misdemeanors. One is for possession of marijuana less than 1 gram, I was convicted for about a week for that charge and I did about 2 weeks for a threat charge. I do have a juvenile record. One of those cases was for u.u.m.v. My friend and I went for a joy ride in his uncle's truck. The other cases were filed by my mother. I'm not sure what the case was. As a child I was beaten and mistreated by my mother for whatever reason, I was involved with CPS behind her. She also took me to a psychiatric ward but I was never diagnosed with nothing after evaluations. She was just doing those things to get rid of me. My father was informed about the things that were going on so he took me from my mom. He lived a lifestyle of a lot of criminal activity and drugs and from there I moved with my godmother which was the best thing that happened. She made sure I went to church every Sunday and school every day She treated me how a child was supposed to be treated. When I went to T.Y.C. for u.u.m.v, I took advantage of getting my GED as well as taking a trade for auto mechanic at San Jacinto College. After I completed those courses I was released. Once I was out, within a week I was working at Whataburger then I was working at a daycare and there I was a care giver with the school age kids. About a month later I had another job at the AMC movie theater at Deer Brook Mall. I was working all three of these jobs at once until I saved enough money to get an apartment. I was only working at Whataburger once I moved into my apartment because of the bus route. I had that job for about a year and a half. I lost the job and about three months later I lost my apartment. I moved in with my grandmother who had cancer and she died. About six months later I was homeless, hungry and had a six month old son. I got involved with the wrong crowd and here I am. About 2 months before I got arrested my son's mother told me she was pregnant with our second child. [So] now I have 2 boys.

> One is 1 and the other is 2 years old. She also has 2 other kids that are also boys that are 3 and 6 and I claim them too. Me and my kids mother are still together. But by the horrible mistakes I've made, I've abandoned my 4 boys as well as my kid's mother, whom I wish to marry once released. I am truly sorry for the pain I've caused the victims, the community and my family. If I could turn back the hands of time, I would've never gotten involved with these guys. I've asked God for forgiveness and I'm asking the Court for forgiveness and leniency."

(Document No. 105). The record further shows that the Court heard from the prosecutor, defense counsel and from James, at the October 14, 2016, Sentencing:

> Mr. Wilson: Yes, Your Honor. Mr. James has filed a statement, along with the objections where he denies threatening Crystal Lewis. And I would suggest to the Court that it rings true. What is very important is that it's a male to female detention at jail. Mr. James says that he saw her one time walking with a guard through a glass window, and he says he never made any gestures to her at all. So my suggestion to the Court is that the consequences of his losing five points are so harsh and this evidence is so thin, I would ask the Court to grant my objections and lower by five levels.
>
> The Court: You are saying three points for acceptance of responsibility and two points for obstruction of justice?
>
> Mr. Wilson: Right. Because he was given points for obstruction and ineligible for acceptance of responsibility.
>
> The Court: All right.
>
> Ms. Moyer: Your Honor, not only did the actual victim of the threat, who was Crystal Lewis, one of the codefendants in this case, see it, but another defendant in that facility saw it. Both of them wrote memorandums about the incident. I think it is not just a one versus one situation. We have two people that saw it. Because of that, I think the obstruction hit should stand as it is in the PSR.
>
> The Court: Do you have something you want to say?
>
> The Defendant: Ms. Harmon, when we are being moved around—this thing occurred in Montgomery County where she made the statement. But when we are being move, there is two guards with us all the time. And where I was located at, I did see her. I'm not going to lie. I seen her, but I never—it was like she just walked past. There wasn't any time for me to even just blink and see her. If I would have blinked, I would have missed her. But there is guards there at all times. The statement of the

> witness came from another inmate in the jail, Your Honor. And if this did happen, I wasn't —it wasn't never brought to my attention until I came over here, and they read out the complaint or whatever. I never was questioned about this or anything. If it happened, why didn't the guard or the person working in the jail say anything about it? Or I didn't get wrote up or nothing.
>
> The Court: Well, I think that the —I'm convinced something happened. . . . .

(Document No. 184, p. 5-7). The law is clear that "[w]hen making factual findings for sentencing purposes, district courts may consider any information which bears sufficient indicia of reliability to support its probable accuracy. Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations. A district court, therefore, may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Harris,* 702 F.3d 226, 230 (5th Cir. 2012)(internal citations omitted). Here, the record shows that James offered no rebuttal evidence or otherwise demonstrated that the information in the PSR was unreliable. Upon this record, James's *Alleyne* claim fails.

### III. Conclusion and Recommendation

As discussed above, James's knowing and voluntary waiver of this right to collaterally attack his conviction serves as a bar to the instant § 2255 motions being considered by the Court, and in the alternative, his claims fail as a matter of law. IT IS

RECOMMENDED that the Government's Motion to Dismiss as Barred by Plea Agreement (Document No. 189 ) be GRANTED, and that Movant Jerrell Devon James's § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 189) be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented

parties of record. Within 14 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 24th day of May, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE